**IN THE COURT OF APPEALS OF IOWA**

No. 18-1556
Filed November 7, 2018

**IN THE INTEREST OF O.C.,**
**Minor Child,**

**S.L., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Benton County, Barbara H. Liesveld, District Associate Judge.

　　　A mother appeals the termination of her parental rights. **AFFIRMED.**

　　　Melody J. Butz of Butz Law Offices, PC, Center Point, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

　　　Judith Jennings Hoover of Hoover Law Office, P.C., Cedar Rapids, guardian ad litem for minor child.

　　　Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to O.C., born in 2014.[1]  She argues: (1) reasonable efforts under Iowa Code section 232.102(7) (2018) to return the child to her home were not made, and (2) termination is not in the best interests of the child.

The child was removed from her mother's care in June 2017 due to the mother's use of methamphetamine while caring for the child.  The child was adjudicated as a child in need of assistance (CINA) the same month.  Due to the mother's ongoing issues with substance abuse and inconsistency in attending visitation, a petition to terminate parental rights was filed in May 2018, and trial was held on July 10, 2018.  Thereafter, the juvenile court concluded the State proved by clear and convincing evidence that the mother's parental rights to the child should be terminated pursuant to sections 232.116(1)(h) and (*l*).  The court also concluded termination is in the best interests of the child and that none of the exceptions under section 232.116(3) applied.  The mother appeals.[2]

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis.  *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010).  First, the court must determine if a ground authorizing the termination of parental rights under section 232.116(1) has been established.  *See id.* at 40.  Second, if a ground for

---

[1] The father of the child is deceased.

[2] In her brief, the mother states she preserved error by filing a timely notice of appeal.  We note that a timely notice of appeal "has nothing to do with error preservation." *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court").

termination is established, the court must apply the framework set forth in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.* at 41. The exceptions set forth in subsection three are permissive and not mandatory. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

The mother does not challenge the State's establishment of the statutory grounds for termination, nor does she suggest any statutory exception applies to preclude termination, so we need not discuss these steps in our analysis. *See P.L.*, 778 N.W.2d at 40. Instead, she contends the State failed to make reasonable efforts under section 232.102(7) to provide visitation with the child, and that termination is not in the child's best interests. In passing, and without argument, she also suggests she should have been granted a six-month extension. The mother has not preserved error with respect to any issue raised in this appeal, or she has waived any challenge to the termination of her parental rights. "[T]he general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The mother was present at the beginning of the termination trial. Prior to the taking of testimony, the mother's counsel stated:

> [The mother] has made the very difficult decision—she is not in agreement with termination of [the child]'s rights but does not intend to put on any evidence in resistance to the State's Petition. She would request that the adoptive family, that they not change [the child]'s last name and that is the last name of her deceased father. And while she would prefer guardianship for [the child], she

understands that given her young age that adoption is likely. And at this time, Your Honor, she would ask to be excused.

The court responded to the mother that "it's always difficult to place the interests of your children ahead of your own so I appreciate the difficulty of the decision you're making today. And if you wish to be excused, you may." The mother then left the courtroom. She did not challenge the State's evidence, and she did not testify. She offered one exhibit showing she had completed substance-abuse treatment. She made no complaint about lack of reasonable efforts regarding visitation. She did not ask for a six-month extension. The mother's counsel made no closing argument. The mother's failure to challenge the termination of her parental rights in the juvenile court constitutes the failure to preserve error and/or waiver. *See In re A.W.*, No. 18-0094, 2018 WL 1182618, at *1 (Iowa Ct. App. Mar. 7, 2018) (collecting cases).

Even if the mother had preserved error or not waived her claims, her claims on appeal are unavailing. We review termination proceedings de novo. *See A.M.*, 843 N.W.2d at 110. We are not bound by the juvenile court's findings of fact, although we give them weight, especially those concerning witness credibility. *See id.*

The mother first argues the State failed to make reasonable efforts to avoid terminating her parental rights because the Iowa Department of Human Services (DHS) did not facilitate more frequent visits with the child. As part of its proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(7) (providing DHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with

the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [DHS] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The core of the mandate is the DHS must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493. Although the State has an obligation to make reasonable efforts toward reunification of the family, "a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). The mother asserts her requests to DHS for more frequent visits with less supervision fell on deaf ears and that she made this known to the juvenile court at the April 10 and May 29, 2018 hearings—apparently with no results. She did file a request for services on June 26, 2018, asking the DHS to arrange more visits and provide transportation therefore. The court never ruled on the motion. The mother did not raise the issue at the termination hearing. Her failure to challenge the reasonableness of any services during the termination trial precludes her from raising this issue for the first time on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.")

In any event, regarding the visitation issue, the juvenile court found,

> [The mother] was offered regular supervised interactions with [the child]. [The child] lives with [the maternal grand]mother, who is authorized to supervise daily contact. [The mother] has not been consistent with her visits with [the child]. Since 9/29/17, [the mother] has only attended 17 visits with [the child]. During her visits, [the mother] is not consistently engaged with [the child] and will fall asleep. On several occasions, [the mother] has included unapproved persons at her visits. [The mother] has multiple excuses for missed visits including lack of transportation, however, she appears to be able to get wherever she needs to go when it is something that she wants to do.

The court concluded DHS offered services in an attempt to reunify without success. On our de novo review of the record, we agree and conclude the DHS made reasonable efforts to facilitate visitation with the child.

The record discloses the mother did not consistently provide the DHS with samples for drug testing. The juvenile court found that since November 9, 2017, the five tests the mother did complete were all positive for methamphetamine. Those tests were conducted on August 5, October 1, and October 22 of 2017, and January 21 and July 1 of 2018 (less than two weeks before the termination trial). The juvenile court also noted that the mother's "appearance and demeanor in court today are indicative of ongoing drug use." Further, the court found,

> [The mother] has a criminal record that includes purchase of pseudoephedrine from 2007 and a child-endangerment charge from 5/1/17. She is currently on a two-year probation for the child endangerment charge.
> [The mother] has ongoing mental-health issues. It is an expectation of the [DHS] that [the mother] attend individual counseling to address mental-health issues. [The mother] indicated that she was attending by weekly sessions. This was untrue. [The mother] had not seen her counselor since 3/26/18. [The mother] also reported seeing [a doctor] for medication management for her anxiety and depression. It is unknown whether or not she is actually taking the medications or [taking them] as prescribed.

The court also found the mother continued to associate with inappropriate persons.

In finding that it is in the best interests of the child to terminate the parent-child relationship, the juvenile court concluded,

> [The child] has been out of parental care for over [a year]. [The] mother continues to use methamphetamine. [The mother] continues to associate with inappropriate persons. [The mother] has not maintained an adequate bond with her [child].

Again, we agree.

Even if the mother had preserved error or not waived her claims, on our de novo review, we find clear and convincing evidence that the DHS met its statutory "reasonable efforts" obligation under section 232.102(7), termination of the mother's parental rights is in the child's best interests, and none of the statutory exceptions to termination apply. We therefore affirm the decision of the juvenile court to terminate the mother's parental rights to the child.

**AFFIRMED.**